UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-793-F

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, and GREAT NORTHERN INSURANCE COMPANY, )<br>)<br>) | |
| Plaintiffs, )<br>)<br>) | |
| v. )<br>) | |
| SOUTHERN LITHOPLATE, INC., SPECTRATECH INTERNATIONAL, INC., and SAM T. ADAMS, )<br>)<br>)<br>) | |
| Defendants. )<br>_____ )<br>) | **ORDER** |
| SOUTHERN LITHOPLATE, INC., SPECTRATECH INTERNATIONAL, INC., and SAM T. ADAMS, )<br>)<br>) | |
| Counterclaim and Third-Party Plaintiffs, )<br>)<br>) | |
| v. )<br>) | |
| FEDERAL INSURANCE COMPANY, GREAT NORTHERN INSURANCE COMPANY, ARROWOOD INDEMNITY COMPANY, WAUSAU UNDERWRITERS INSURANCE COMPANY, WAUSAU BUSINESS INSURANCE COMPANY, LIBERTY INSURANCE CORPORATION, PHOENIX INSURANCE COMPANY, and TRAVELERS INDEMNITY COMPANY, )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Counterclaim and Third-Party Defendants. ) | |

This matter is before the court on Third-Party Defendants Travelers Indemnity Company and Phoenix Insurance Company's motion for judgment on the pleadings [DE-73]. Phoenix and Travelers (collectively "Travelers") move for judgment on the pleadings as to all third-party

claims asserted by Southern Lithoplate, Spectratech, and Sam T. Adams (collectively "Southern Lithoplate"). The remaining parties in this litigation have reached a settlement as to all remaining claims. Stipulation of Dismissal [DE-101]. For the reasons that follow, the motion is ALLOWED and all third-party claims against Travelers and Phoenix are DISMISSED.

## FACTUAL AND PROCEDURAL BACKGROUND

Southern Lithoplate's third-party complaint requests, *inter alia*, a declaratory judgment finding that Travelers has a duty to defend Southern Lithoplate in two separate West Virginia state court environmental lawsuits ("the underlying actions"). In the underlying actions, the plaintiffs allege that Southern Lithoplate's industrial activities contaminated the groundwater in various West Virginia locations. Upon receiving notice of the West Virginia lawsuits, Southern Lithoplate notified their various insurance providers, including Travelers, and requested that these companies assume its legal defense and provide indemnification in the event Southern Lithoplate is found liable. Travelers did not immediately assume Southern Lithoplate's defense in the underlying actions, but placed Southern Lithoplate's claims under consideration. Plaintiffs Federal Insurance and Great Northern assumed Southern Lithoplate's defense, but under a reservation of rights clause in the insurance contract that allows these companies to deny coverage and terminate the legal defense if the companies subsequently determine that the policies do not afford coverage. Federal Insurance and Great Northern thereafter filed the instant lawsuit, seeking a declaratory judgment that the insurance policies provide no coverage for environmental pollution claims.

Southern Lithoplate's initial third-party complaint [DE-24] added Travelers and Phoenix as Third-Party Defendants and sought a declaratory judgment that the insurance polices provide

coverage.[1] Southern Lithoplate subsequently filed an amended third-party complaint [DE-67], which is the operative third-party complaint and the subject of Travelers' motion for judgment on the pleadings. Southern Lithoplate's insurance claims remained under consideration at Travelers until Southern Lithoplate joined Travelers in the instant litigation. Travelers now asserts that the policies it issued to Southern Lithoplate contained an "absolute pollution exclusion" that precludes coverage.

Southern Lithoplate is in the business of producing lithographic plates and other products for the graphics and photography industries. In July, 2012, Eleanor, John, and William Rodman filed suit in West Virginia state court against Southern Lithoplate, alleging various tort claims related to groundwater contamination. The complaint specifically alleges that Southern Lithoplate "generated, stored, transported and disposed of various hazardous wastes, including but not limited to trichloroethylene (TCE)" and that these pollutants contaminated the groundwater. Rodman Complaint [DE-63-1] ¶ 19. The Rodmans assert claims for (1) private nuisance; (2) public nuisance; (3) negligence; (4) continuing trespass; (5) strict liability; and (6) negligent infliction of emotional distress. The second West Virginia action involves a separate group of property owners, the Fryes. The Fryes assert the same factual allegations and legal claims against Southern Lithoplate as the Rodmans.

As of the time of the filing of the instant motion for judgment on the pleadings (July, 2013), discovery in the underlying actions had not progressed to the point where the precise

---

[1] Southern Lithoplate's third-party complaint initially named the Travelers parties as "Travelers Insurance Company." However, the court allowed the parties' consent motion to substitute Phoenix Insurance Company and Travelers Indemnity Company for the Travelers Insurance Company. May 13, 2013 Order [DE-53]. For purposes of clarity, the court refers to both Travelers and Phoenix as "Travelers" throughout this order.

3

hazardous wastes that contaminated the groundwater had been identified. For purposes of deciding the instant motion, the court assumes that the identity of the hazardous wastes remains unknown at this time.

## DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate where the case turns on a legal question and the pleadings demonstrate that the moving party is entitled to judgment as a matter of law. *See Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721, 728 (E.D.N.C. 2008); *Smith v. McDonald*, 562 F. Supp. 829, 842 (M.D.N.C. 1983), *aff'd*, 737 F.2d 427 (4th Cir. 1984), *aff'd*, 472 U.S. 479 (1985)). The court assumes the facts alleged by the nonmoving party are true and all reasonable inferences are drawn the nonmoving party's favor. *See Volvo Constr. Equip. N. Am. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 591 (4th Cir. 2004); *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). Where the insurance policy is "integral to and explicitly relied on in the complaint" and its "authenticity is not in question[,]" the court may consider the policy itself along with the factual allegations of the complaint and answer, without converting the motion into one for summary judgment. *See Colin v. Marconi Commerce Sys. Emps.' Ret. Plan*, 335 F. Supp. 2d 590, 596 (M.D.N.C. 2004); *see also Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (discussing standard in context of Rule 12(b)(6)).

## B. Choice of Law Issue

As a preliminary matter, the court finds that North Carolina law governs this dispute. A federal court sitting in diversity must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In North Carolina, under the principle of *lex loci contractus*, the substantive law of the state where the last act to make the binding insurance contract controls resolution of disputes relating to the contract. *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000). The "last act to make the binding contract" is typically the delivery of the policy to the insured. *Id.*

Southern Lithoplate does not seriously contest that these policies were delivered in North Carolina, thereby rending North Carolina law applicable. As Travelers notes, Southern Lithoplate and Spectratech's third-party complaint alleges that the companies are North Carolina corporations with their principal places of business in North Carolina. More importantly, the insurance contracts themselves indicate that they were delivered to Southern Lithoplate in North Carolina. Exhibits A-J to Answer to Third-Party Complaint [DE-72-1 to 5]. Although Southern Lithoplate does not outright state this, it essentially concedes North Carolina law applies by relying almost exclusively on North Carolina law in its response in opposition. *See* Response [DE-91].

The court acknowledges that Southern Lithoplate's response "incorporated as fully set forth" a separate brief it filed in this litigation [DE-91] and that brief challenges application of North Carolina law. However, neither of Southern Lithoplate's briefs address the argument raised by Third-Party Defendants that the policies demonstrate on their face that they were

5

delivered in North Carolina. Accordingly, the court will apply North Carolina law to this dispute.

## C. North Carolina Insurance Law

It is well-settled that the interpretation of an insurance contract is a question of law for the court. *North Carolina Farm Bureau Mut. Ins. Co. v. Mizell*, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). "'[I]f the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written . . . .'" *Dawes v. Nash Cnty.*, 357 N.C. 442, 448-49, 584 S.E.2d 760, 764 (2003) (quoting *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978)). However, any doubt or ambiguity as to coverage must be resolved in favor of the insured. *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 693, 340 S.E.2d 374, 378 (1986).

The North Carolina Supreme Court has distinguished the duty to defend and the duty to indemnify. To determine whether an insurer must defend an insured in an underlying action, "the pleadings [in the underlying action] are read side-by-side with the policy to determine whether the events as alleged are covered or excluded." *Id.* at 692, 340 S.E.2d at 378. If there is "a mere possibility" that the facts alleged in the underlying action are covered under the policy, the insurer has a duty to defend. *Id.* at 691 n.2, 340 S.E.2d at 377 n.2. By contrast, the duty to indemnify arises only if the facts as determined in the underlying action are covered by the policy. *Id.*

6

### D. Comparison of the policies and the facts alleged in the underlying actions.

During the relevant time frame, Travelers issued approximately ten separate policies to Southern Lithoplate.[2] However, the pollution exclusion provision is identical across all the policies. The policies each define the term "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste." *See, e.g.*, Phoenix Insurance Policy, Commercial General Liability Coverage Form [DE-72-2] at 2; Travelers' Br. in Supp. of Mot. for J. on the Pleadings [DE-74] at 7 (explaining each policy uses the same definition). The pollution exclusion provision is also identical across policies. The provision excludes claims for bodily injury or property damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants." *See, e.g.*, Phoenix Insurance Policy, Commercial General Liability Coverage Form [DE-72-2] at 2; Travelers' Br. in Supp. of Mot. for J. on the Pleadings [DE-74] at 7-8 (explaining each policy uses the same or substantially similar definition). The policies also separately exclude claims for reimbursement of costs a company may incur as a result of governmental remediation[3] or other requests/demands for remediation.

The factual allegations in the underlying actions allege the precise type of pollution excluded by the policies. For example, the claims against Southern Lithoplate allege that it caused a public and private nuisance by "the release of hazardous wastes and contaminants from

---

[2] Travelers issued this relatively large number of policies because it needed to issue new policies whenever an amendment or reinstatement occurred.

[3] Under CERCLA and various state environmental laws, private companies responsible for environmental contamination must reimburse state or federal authorities for the costs of remediation. *See generally Scottsdale Indem. Co. v. Vill. of Crestwood*, 673 F.3d 715, 718-19 (7th Cir. 2012). These provisions exclude insurance coverage for claims associated with governmental remediation liability or other private demands for remediation. *Id.*

[Southern Lithoplate] facilities," *see, e.g.*, Rodman Complaint [DE-63-1] ¶ 46; that Southern Lithoplate's negligent actions "caused TCE and other hazardous wastes and contaminants to be deposited into Plaintiff's property[,]" *id.* ¶ 65; that Southern Lithoplate's "acquisition, use, storage, and disposal of TCE and other toxic chemicals was ultrahazardous" and therefore Southern Lithoplate should be strictly liable for any damages caused by the pollutants, *id.* ¶ 72; and that Southern Lithoplate negligently inflicted emotional distress by its conduct in negligently disposing of the pollutants. *Id.* ¶ 76.

Comparing the pollution exclusion provisions to the facts alleged in the underlying actions, it is plain that Travelers has no duty to defend at this stage of the litigation. The policies define the term "pollutant" broadly and it obviously covers any "hazardous waste" capable of contaminating the plaintiffs' properties. Plaintiffs in the underlying actions allege that they sustained both property damage and bodily injuries as a result of Southern Lithoplate's negligent release of TCE and other hazardous wastes onto their property. As Travelers notes, it is difficult to contemplate a more textbook example of allegations covered by the policies' pollution exclusion provisions. *See, e.g.*, Phoenix Insurance Policy, Commercial General Liability Coverage Form [DE-72-2] at 2 (excluding coverage for bodily injury or property damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants."). Although the plaintiffs in the underlying actions raise a host of different legal claims, each claim is predicated on factual allegations similar to those outline above—and these factual allegations are plainly excluded by the policies' pollution exclusion provisions.

Southern Lithoplate focuses on the fact that discovery has not been completed in the underlying actions and argues it is therefore "premature" for the court to find that these policies

8

exclude coverage. With respect to the duty to defend, however, this argument misconstrues the law. The duty to defend is determined by comparing the allegations in the underlying complaints to the policy provisions. *Waste Management*, 315 N.C. at 691-93; 340 S.E.2d at 377-78. The facts alleged in the underlying actions fall squarely within the policies' pollution exclusions and therefore exclude even the "mere possibility" that Travelers needs to assume Southern Lithoplate's defense. *See id.* at 691 n.2, 340 S.E.2d at 377 n.2; *Home Indem. Co. v. Hoechst Celanese Corp.*, 128 N.C. App. 226, 234-35, 494 S.E.2d 768, 773-74 (1998) (denying coverage under plain language of the pollution exclusion provision). The duty to indemnify—a separate issue—is addressed below.

### E. *West Am. Ins. v. Tufco Flooring*

Southern Lithoplate's primary argument is that the court should not enforce the pollution exclusion provisions pursuant to the so-called "business activities exception." *See West Am. Ins. v. Tufco Flooring E. Inc.*, 104 N.C. App. 312, 320-21, 409 S.E.2d 692, 697-98 (1991), *review allowed,* 330 N.C. 853, 413 S.E.2d 555 (1992), *and review denied as improvidently granted,* 332 N.C. 479, 420 S.E.2d 826 (1992), *and overruled on other grounds by Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co.*, 351 N.C. 293, 524 S.E.2d 558 (2000).[4] In *Tufco*, Perdue Farms hired Tufco to perform floor resurfacing work at one of its chicken processing facilities. *Id.* at 314, 409 S.E.2d at 693. In the course of the resurfacing work, contaminants seeped into a cooler containing approximately $500,000 worth of chicken. *Id.* The contaminants spoiled the chicken entirely and Perdue brought suit for damages caused by the seepage. *Id.* Subsequently, West

---

[4] The Fourth Circuit has held that a federal court sitting in diversity and applying North Carolina law is "obliged to follow [*Tufco*]" where it is directly on point. *Auto-Owners Ins. v. Potter*, 105 F. App'x 484, 489 (4th Cir. 2004).

9

American Insurance brought a declaratory judgment action seeking a declaration that the policy's pollution exclusion provision precluded coverage. *Id.*

The North Carolina Court of Appeals held that "four independent grounds" supported its conclusion that the pollution exclusion provision did not exclude coverage. *Id.* at 316, 409 S.E.2d at 695. As relevant here, the second ground is known as the "central business activities exception." The exception only applies when the policy is ambiguous with respect to coverage for a particular loss. *Id.* at 320, 409 S.E.2d at 697 (applying central business activity exception because the "policy applied to this claim is ambiguous"). In such a circumstance, North Carolina law requires that the contract be construed against the drafter and "as a reasonable person in the position of the insured would have understood it to mean." *Id.* at 321, 409 S.E.2d at 697. Because the policy in *Tufco* was ambiguous with respect to the issue of whether the pollution exclusion provision should apply to the loss associated with the contaminated chicken, the court construed the policy in favor of awarding coverage. As the *Tufco* court explained, "[a] reasonable person in the position of Tufco would have understood claims such as Perdue's to be covered. Tufco is in the business of installing industrial flooring, and Tufco purchased a commercial liability policy to protect it from liabilities arising from the very type of activity at issue here." *Id.* The *Tufco* court also noted that "[t]o allow West American to deny coverage for claims arising out of Tufco's central business activity would render the policy virtually useless to Tufco." *Id.*

Southern Lithoplate maintains that *Tufco*'s central business activities exception precludes judgment on the pleadings in this case. According to Southern Lithoplate, applicability of the pollution exclusion provision can never be decided on a motion for judgment on the pleadings

10

under *Tufco* because the "mere possibility" always exists that the pollutants were used in the course of the insured's central business activity. The court does not agree.

The central business activity exception cannot be read so broadly that it eviscerates the pollution exclusion in every case in which an insured uses a pollutant in the course of its central business activity. *See Hoechst Celanese*, 128 N.C. App. at 234-35, 494 S.E.2d at 773-74 (enforcing pollution exclusion provision); *Vill. of Crestwood*, 673 F.3d at 718-20 (explaining policy justification for pollution exclusion and reviewing typical environmental cases in which the exclusion applies). The proper reading of *Tufco* is not that it creates a blanket rule whereby every company that uses pollutants in the course of its central business activity is exempt from the pollution exclusion provisions of their insurance contracts. Instead, *Tufco* applies to the (much narrower) circumstance in which an ambiguity exists between application of the pollution exclusion to the particular facts alleged in the underlying actions and the insured's primary business activity itself.[5] *See Tufco*, 104 N.C. App. at 321, 409 S.E.2d at 697 (employing central business activities exception where the "policy applied to this claim is ambiguous" and noting "Tufco is in the business of installing industrial flooring, and Tufco purchased a commercial liability policy to protect it from liabilities arising from the very type of activity at issue here.").

---

[5] The court notes that the Fourth Circuit appears to have interpreted *Tufco* even more narrowly, albeit in an unpublished opinion. In *Potter*, the Fourth Circuit read *Tufco* as requiring an ambiguity between the pollution exclusion provision and another written provision of the insurance contract that arguably provided coverage under the circumstances. *See Potter*, 105 F. App'x at 492-93 ("Because we find that no ambiguity existed in the interplay between these contractual terms, we need not further entertain Appellants' argument that the [policy] is ambiguous because it purportedly does not provide coverage for claims arising out of [the insured's] central business activity." (citation omitted)). Here, Southern Lithoplate argues that under *Tufco* the pollution exclusion provision cannot exclude coverage for an insured's central business activity as a general matter, regardless of whether an ambiguity exists between the pollution exclusion and other provisions of the contract. Because it does not affect the outcome of this case, the court gives Southern Lithoplate the benefit of the doubt on this issue and presumes the North Carolina Supreme Court would adopt Southern Lithoplate's interpretation.

11

Southern Lithoplate's attempts to cherry-pick statements out of *Tufco* to suggest that the possibility of coverage exists whenever an insured uses pollutants in the course of its central business activity entirely divorces the central business activity exception from *Tufco*'s facts. *Tufco* addressed contamination of a container of frozen chicken that occurred during floor resurfacing work. The court of appeals understandably considered application of the pollution exclusion provision ambiguous in that context. By contrast, there is absolutely no indication that the central business activity exception applies in the context of traditional environmental contamination, where the plain language of the policy obviously excludes coverage. Instead, the exception applies where an insurer is attempting to apply the pollution exclusion to an injury that is not associated with traditional environmental pollution, in an attempt to "hide behind ambiguities in the policy and deny coverage for good faith claims that arise during the course of the insured's normal business activities." *Id.*

This case, in contrast (and contrary to Southern Lithoplate's arguments), is a typical environmental pollution case. The plaintiffs in the underlying actions accuse Southern Lithoplate of contaminating their groundwater, a prototypical environmental harm that triggers application of the pollution exclusion. *See Nationwide Mut. Ins. Co. v. Mabe*, 342 N.C. 482, 492, 467 S.E.2d 34, 40 (1996) (explaining "if a policy is not ambiguous, then the court must enforce the policy as written"); *Vill. of Crestwood*, 673 F.3d at 720-21 (applying pollution exclusion provision to groundwater contamination and noting "groundwater contamination . . . is extremely common and a fertile source of environmental litigation"). Moreover, it is simply not plausible that an insured would voluntarily sign an insurance contract with a broad pollution exclusion provision if its central business activity presented the risk of traditional environmental harm. As

12

Travelers notes, if Southern Lithoplate wanted coverage for traditional environmental pollution, it could have negotiated (presumably at higher premiums) for such coverage.

For the foregoing reasons, the court finds that *Tufco*'s central business activity exception cannot possibly apply to the claims alleged in the underlying complaint. *See Peerless Ins. Co.*, 315 N.C. at 691 n.2, 340 S.E.2d at 377 n.2 (explaining the insurer has a duty to defend if the underlying allegations present even the "mere possibility" that the policy provides coverage). Southern Lithoplate reads *Tufco* far too broadly and entirely ignores the factual circumstances that gave rise to the central business activities exception. As explained in the more detail below, however, this finding applies solely to the duty to defend, and should not be construed as precluding Southern Lithoplate from arguing that *Tufco* applies in the context of the duty to indemnify when that claim becomes ripe.

## F. Nature of the Underlying Claims

Southern Lithoplate also raises the argument that the nature of the underlying claims, the majority of which sound in negligence, obligates Travelers to defend regardless of the fact that the injuries were allegedly caused by pollution. This argument is precluded by the plain language of the pollution exclusion, which excludes coverage for "for bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants." *See, e.g.*, Phoenix Insurance Policy, Commercial General Liability Coverage Form [DE-72-2] at 2; Travelers' Br. in Supp. of Mot. for J. on the Pleadings [DE-74] at 7 (explaining each policy uses the same definition). The applicability of this provision is not determined by the nature of the legal claims asserted against Southern Lithoplate, but instead by the nature of the facts alleged. As explained above, "the pleadings [in the underlying action] are

13

read side-by-side with the policy to determine whether the *events as alleged* are covered or excluded." *Waste Mgmt.*, 315 N.C. at 693, 340 S.E.2d at 378 (emphasis added).

The court recognizes that in some cases application of the plain language of the pollution exclusion produces absurd results. As Judge Posner noted in *Village of Crestwood*,

> Suppose a tanker truck filled with perc crashes into a bridge abutment, spilling its liquid cargo, and another vehicle skids on the wet surface of the highway into the abutment, injuring the driver. Perc is both a contaminant and a cause of the bodily injuries in this example. But it would be absurd to argue—and the insurers do not argue—that a claim arising from such an accident would be within the pollution exclusion, since in no reasonable sense of the word "pollution" was the driver a victim of pollution.

673 F.3d at 717. In this example, while the injured driver's claim arguably may be covered by the plain language of the pollution exclusion, courts are reluctant to deny coverage because the injury, while caused by the pollutant, is not a traditional environmental claim. In these cases, the courts will often uphold coverage despite the pollution exclusion. *See id.* at 716-17 (collecting cases). By contrast, the claims against Southern Lithoplate are prototypical environmental claims. *See id.* at 720-21. That the claims involve allegations such as the "failure to warn" and "failure to abate the condition" do not change the fact that the factual allegations fit squarely within the policies' pollution exclusion provisions.

## G. Unfair and Deceptive Trade Practices Claim

Southern Lithoplate also argues that the unfair and deceptive trade practices claim should proceed because Travelers' failed to address it in its motion for judgment on the pleadings. This claim is predicated on Travelers' refusal to immediately assume Southern Lithoplate's defense in the underlying actions. Travelers responds (in its reply brief) that if it never had a duty to defend,

14

its refusal to immediately assume Southern Lithoplate's defense cannot be an unfair or deceptive trade practice.

This argument is entirely convincing. The court has ruled as a matter of law that Travelers does not have a duty to defend Southern Lithoplate in the underlying litigation. Accordingly, nothing about Travelers' refusal to immediately provide a defense in the underlying actions was unfair or deceptive. *See ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co.*, 472 F.3d 99, 122 (4th Cir. 2006) (explaining that conduct must be unfair or have the capacity or tendency to deceive to make out a claim for unfair and deceptive trade practices under North Carolina law). While it is true that Travelers took several months to provide a coverage position, that circumstance alone does not rise to the level of an unfair or deceptive trade practice, especially in light of the significant uncertainty regarding coverage for Southern Lithoplate's claims.[6] *See Dalton v. Camp*, 353 N.C. 647, 657, 548 S.E.2d 704, 711 (2001) (explaining a practice is only unfair or deceptive where "some type of egregious or aggravating circumstances" are present (internal quotation marks omitted)). Because the only unfair or deceptive practice alleged in the third-party complaint cannot possibly (let alone plausibly, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) support a claim for unfair and deceptive trade practices, the claim is dismissed.

---

[6] In addition, the court presumes that in the event Travelers (or the court) found a duty to defend arose in this case, Travelers would be liable for any litigation costs Southern Lithoplate had already incurred. *See Waste Mgmt.*, 315 N.C. at 691, 340 S.E.2d at 377. The fact that Southern Lithoplate waited several months for a coverage position and incurred litigation costs during that time, while inconvenient, cannot be "egregiously" unfair to Southern Lithoplate when it would have been reimbursed for the costs associated with the defense if coverage attached.

15

## H. Duty to Indemnify

As the court noted above, the foregoing discussion applies solely to the duty to defend. With respect to the duty to indemnify, the court agrees with Southern Lithoplate that it cannot render a declaratory judgment at this stage. As the North Carolina Supreme Court has stated, "any insurer's . . . duty to [indemnify] is measured by the facts ultimately determined at trial." *Waste Mgmt.*, 315 N.C. at 691, 340 S.E.2d at 377. At this stage of the litigation, the record before the court contains only the initial pleadings from the West Virginia litigation. Although it appears unlikely, it is possible that the facts proven at trial may differ markedly from the factual allegations contained in the underlying complaints and that those facts could trigger a duty to indemnify.[7]

However, rather than allowing this case to remain open pending further factual development in the West Virginia state court actions, the more efficient use of judicial resources is to dismiss Southern Lithoplate's duty to indemnify claims as unripe at the present time. The dismissal as to the duty to indemnify claims[8] is without prejudice to Southern Lithoplate to file a new declaratory judgment action in the event the ultimate factual findings in the underlying litigation suggest coverage is appropriate and Travelers continues to refuse coverage. Although

---

[7] It is also possible that Travelers ultimately may be found liable for litigation costs associated with the underlying actions as well. *See Waste Mgmt.*, 315 N.C. at 691, 340 S.E.2d at 377 ("[T]he insurer's refusal to defend is at its own peril: if the evidence subsequently presented at trial reveals that the events are covered, the insurer will be responsible for the costs of the defense."). As the court is not currently aware of the facts that will be proved at trial, nothing in this order should be construed as a definitive finding on Travelers' ultimate responsibilities for paying Southern Lithoplate's litigation costs. All this order holds is that the allegations in the underlying actions do not trigger a duty to defend on the part of Travelers at this time.

[8] Southern Lithoplate has also filed a breach of contract action based on Travelers' refusal to defend or indemnify. To the extent that claim is based on the duty to indemnify, it is also dismissed without prejudice. It is dismissed with prejudice to the extent it arises from the duty to defend.

this should be clear from the foregoing discussion, the court emphasizes that nothing in this order should be construed as precluding Southern Lithoplate from litigating the duty to indemnify at a later date.

## CONCLUSION

For the foregoing reasons, Travelers' motion for judgment on the pleadings [DE-73] is ALLOWED and all claims in the third-party complaint against the Travelers Indemnity Company and the Phoenix Insurance Company are hereby DISMISSED. Southern Lithoplate's claims for declaratory judgment and breach of contract against Phoenix and Travelers based on the duty to indemnify are DISMISSED WITHOUT PREJUDICE. All other claims are DISMISSED WITH PREJUDICE. Southern Lithoplate's motion to strike Travelers' Reply Brief [DE-96] is DENIED AS MOOT.

The remaining parties have reached a settlement as to all the remaining claims. Stipulation of Dismissal [DE-101]. Accordingly, all pending motions not addressed above are DENIED AS MOOT. This includes the motions at docket entries 47, 75, 83, and 88. The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This, the __14__ day of March, 2014.

*James C. Fox*
JAMES C. FOX
Senior U.S. District Judge